Ms. Wetzel, excuse me, I was looking at the name of the other person. Thank you, Ms. Wetzel. No problem. Good morning, Your Honors, and may it please the Court. My name is Melinda Wetzel on behalf of Dr. Mark Lawley. This case boils down to the fact that it is not clearly established law that an employee's anticipatory complaint about the potential untimeliness of the payment of leave benefits can constitute protected activity under the FLSA. If that were the case, then every employee's preemptive grumbling about the timing of a paycheck could trigger the FLSA's anti-retaliation provisions. In our brief, we made two arguments. First, that because the plaintiff merely removed Tease from her complaint without changing any substantive allegations or requested relief, the University, and thus the State of Texas, is the real party of interest and is therefore entitled to sovereign immunity. Second, qualified immunity should be available under the FLSA, just as it is under the FMLA, and it applies here because there is no case that holds that a complaint like plaintiff's amounts to protected activity under the FLSA, and there is no case that holds that State officials like Dr. Lawley can be subjected to individual liability under the FLSA. I'll address these arguments in order. First, Tease is the true party in interest in this lawsuit because the relief that plaintiff seeks would ultimately have to come from the State. After learning that sovereign immunity bars her claims against Tease, plaintiff amended her complaint, leaving only the head of her department, Dr. Lawley, in his individual capacity as a defendant. None of her factual allegations changed. She seeks the very same relief she originally sought from Tease in a transparent attempt to circumvent sovereign immunity. Did she get money from him directly? She could get money, Your Honor, under the FLSA if this court were to hold that. If this were an actual FLSA claim, she could recover money damages from him individually? Yes, Your Honor. Then why doesn't that overcome your sovereign immunity argument? Yes, Your Honor. So here the court must determine whether the State is the true party in interest by considering the nature of the case presented as a whole and the record as a whole. And here, Your Honor, in plaintiff's amended complaint, not only does she request items of monetary relief, but she requests a declaratory judgment. She requests injunctive relief. She wants reinstatement. She wants to be removed from no-rehire. But some relief could be barred by the 11th Amendment and some relief couldn't be. As a general matter, that's true in a lot of cases. That's true, Your Honor. Just requesting some relief that's barred by the 11th Amendment doesn't mean the whole thing's barred. True, Your Honor. I would like to emphasize, however, that the plaintiff has acknowledged that she would not be able to obtain the relief that she seeks in the event that Dr. Lawley were to leave his employment with Tees. And so in that event, she informed the district court judge that she would request leave to amend her complaint to add Tees back into the lawsuit at the motion to dismiss hearing. And here, Dr. Lawley's termination of plaintiff was tied inextricably to his official duties as department head. Clarify what you were saying that the plaintiff admitted because you can sue someone under the FLSA. Let's say, forget the government aspect of this. You sue Walmart under the FLSA. There's a whole body of law saying whether you can actually sue an individual, a Walmart supervisor. But if you can, that person could go to work at Target and the lawsuit would still be pending against them. Explain to me what you said plaintiff conceded. Yeah, the record at page 77 and pages 139 and 140 during oral arguments with the district court judge, plaintiff's counsel conceded that she would not be able to obtain the relief that she seeks in the event that Dr. Lawley left his employment with Tees. The damages are all the, I mean, I understand maybe the other parts. Okay. I don't see why that'd be true for damages, but you can go ahead. Sure. And I would just like to emphasize to this court that the monetary damages the plaintiff seeks do include back pay and employment benefits, which Dr. Lawley would also not be able to provide to plaintiff in his individual capacity. However, if this court were to find that Dr. Lawley was truly the real party and interest in this case and will be personally liable for his discretionary actions and further his interests, he must at least have a chance at qualified immunity. And this brings me to my second point. Counselor, I didn't know you were shifting that. Let me ask you just a bit before you return. Sure. One of your happy cases is Henley v. Simpson, which is not precedential, but it is certainly a well-written opinion that we have to pay close attention to. I'm not sure what to say the test of the standard is. One of the things in that opinion says that the payment of back wages will need to come from state treasury because defendants may not have the ability to pay. Why is that the determination? How much money the individual defendant has will determine whether it shifts to the state. If the defendant doesn't have enough money but is properly sued, then the plaintiff just doesn't recover all that the award might be. How do we know just because of the amount of money that may be owed, is that in itself that a lot of money may be owed? Does that in itself shift it to being a suit against the individual person in official capacity? No, Your Honor, and I don't think you've made that argument on appeal. No, I haven't, but I'm just wondering what is the argument. It certainly seems in that opinion, Henley, that the problem was it was too much money for the defendant individually to pay so the state was going to have to pay it. There's even this line in the opinion by Judge Bartsdale that it will cause people not to want to work in these positions if they may be stuck individually. Well, that really seems to be, with respect for that opinion, not really a legal basis for us to decide whether it's a state, whether it's an official capacity or individual capacity suit. So what is the standard based on money damages? When do we know that's really a suit against the state? Sure, Your Honor, and this Court's other cases in the Supreme Court have provided guidance on that front that if the decree would operate against the sovereign, so like I said, employment benefits, right? Dr. Lully cannot provide retirement benefits or health insurance. He doesn't have the capacity to do that. But as far as monetary damages, Your Honor, and this Court has held in a couple of other cases, Lee v. Coahoma County, Mississippi, it's a Fifth Circuit case from 1991 at 937 F. 2D. 220, that a plaintiff could recover overtime from, could recover wages from the county and could only seek liquidated damages from the sheriff in this individual capacity. So that's a case that could provide some guidance as far as the distinction of the types of monetary damages that an individual capacity defendant might be able to provide. And there's another case, Grady v. El Paso Community College, which is 979 F. 2D. 1111, and that's a Fifth Circuit case from 1992 that held that statutory damages under a reserve statute that prohibited denying benefits because of a person's status as a member of the reserve, that reinstatement and back pay must come from the employer, must come from the El Paso Community College. Ms. Wetzel, are those cases in your brief? Those cases are not, Your Honor. Okay, you're citing cases, I'm turning in your brief trying to find these cases because I'm familiar with the case but don't remember it in your brief. And you know that you're not supposed to cite cases not in your brief. Yes, I apologize, Your Honor. Did you tell Mr. Greenfield that you were going to cite those cases before you went on camera this morning? I did not, Your Honor, and I apologize for that. Did you listen to the other arguments today? Maybe not. No, I'm sorry, Your Honor. Because I already went over this with the other lawyers today that you know that you're not supposed to cite new cases, and if you do discover them, you should provide them to opposing counsel. And so, Mr. Greenfield, you'll have an opportunity to prepare a 28-J within three business days if you choose to do so on any of these cases that she cited. Ms. Wetzel, you might give him a list of the new cases that you cited so that he could easily do that after this argument is over. Okay. But while we're on a pause, can you – I'm sorry, did you want to say something about that case, and then I'll – and then I have another question. No, thank you, Your Honor. Okay. I still don't understand – it doesn't gut the case. It only gets rid of some of the claims if you prevail in this argument. Sure. So this is not a – this doesn't get you there. You have to win on the qualified immunity to be done with this case today, and how do we know there is qualified immunity available in the FLSA? Thank you, Your Honor. So turning to the availability of that defense, we would contend that that defense should be available under the FLSA. The FLSA was enacted during the Great Depression to fix minimum wages and maximum hours. It was supposed to balance the interests of employees and employers, much like the FMLA. It was supposed to guarantee a fair day's pay for a fair day's work, guard against the evil of overwork and underpay. And so unlike the purpose of – But one difference with the – I'm sorry, counsel. One difference with the FMLA, the FMLA doesn't require bad intent. I mean, if you give someone – you don't give someone their medical leave, whether you meant to harm them or not, there's liability. With an FLSA – and that might be true with an overtime claim under the FLSA. But with a retaliation claim under the FLSA, which is what we're dealing with here, it requires bad intent. So then why isn't it more like our decision saying under the False Claims Act that it really doesn't make sense to give qualified immunity when you have to have this bad intent to begin with? So, Your Honor, the False Claims Act, the purpose is to discourage fraud against the government. And here under the FLSA, Congress did not abrogate sovereign immunity in its drafting of the FLSA. So its good faith defense in Section 206 cannot be construed to be a limitation on the state entity's available defenses. And just like the FMLA, this was more of a – the DOL can bring cases against the state for egregious instances of violations. But as far as private causes of action, state governments were not the targeted employers. So the 206 defense, the good faith defense, was more of a carrot offered to those private employers that would not otherwise be able to avail themselves of the qualified immunity defense. So as far as the False Claims Act, the primary purpose was the whistleblower provision that was intended to encourage those with knowledge of fraud to come forward. And the primary goal of the FLSA isn't reporting or whistleblowing. Its purpose is to ensure a minimum standard of living for workers. But there is no qualified immunity defense in the statute. I think we'll all agree with that. That's true, of course, of 1983 where courts have read it in. But in reading it in, because it's not in the text – we start with that premise. I think Judge Silberman in the D.C. Circuit has an opinion about this. But because it's not in the text, isn't it your burden to show that there was some common law immunity that Congress understood in the Great Depression when it passed this law would be applied by courts to suits like this brought against – and it's not just state officials. It's any county employees, city employees would have qualified immunity. Yes, Your Honor. So I think that the common law element of this – Texas never had a – had at-will employment, I believe, until the 60s or 70s. And so there weren't any common law immunities that Congress could have been said to be modifying or turning to when drafting this statute insofar as Texas entities. And I'm not sure if that answers your question. That seems to counsel – because you're right. There really wasn't this world of employment litigation because it was at-will employment under the common law. So doesn't that hurt you that there is – because it just wasn't a thing, employment litigation, there's no basis for a common law immunity that the courts recognized in 1983 saying there was these immunities? And that's subject to debate now, but the courts at least grounded it in immunities from suits for – tort suits against public officials. But it seems to me if you're saying – I might not be making sense. Your answer seems to be, well, there was just no employment law before in the 1930s, right? This was a pretty novel statute. So doesn't that mean Congress wouldn't have assumed that there were some preexisting defenses to such suits? I think so, Your Honor. I have to admit I'm not sure if I understand the question, but – You can go on. You just have a minute left. It's fine. Yeah, yes, I apologize. So as far as the availability of the defense in this context, it would serve the public good here, just like the availability of this defense under other employment law statutes, because it preserves the official's ability to serve the public good and ensure that talented candidates would not be deterred by the threat of damage of suits for their good-faith actions. And it would ensure that insubstantial claims don't produce a trial. It would ensure that only clearly established FLSA violations can be brought against public officials. And so this court should find that the qualified immunity defense is applicable in the FLSA retaliation context. And before I conclude, Your Honors, I would just like to say that it is plaintiff's burden to establish that Dr. Lawley violated one of the clearly established rights, and plaintiff has not been able to point to a case that would establish that the type of complaints that she made would constitute protected activity under the FLSA, such that Dr. Lawley would have fair notice. Thank you, Your Honors. Mr. Greenfield, you may proceed. You're on mute. My apologies. Zoom newbie here. Your Honors, my name is Adam Greenfield, and I represent Ms. Christine's from asking this matter. Section 202 of the FLSA sets forth the statute's congressional finding in Declaration of Policy, which is to correct, and as rapidly as practical, to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. For many Americans, like my client, Ms. Stramaski, they cannot meet the minimum standards of living for themselves and their family if they cannot be paid timely. No family should go hungry. No mortgage should go unpaid because an employer won't pay their employees as promised. My client, Christy Stramaski, alleges that Dr. Mark Lawley, the Department Head of Industrial and System Engineering at Texas A&M Engineering Experiment Station, a state agency, falsified reasons to terminate her employment as an academic advisor in that department in retaliation for trying to get paid on time. After escalating an untimely payment issue to the Assistant Dean for Finance and the Director of HR, Dr. Lawley told Ms. Stramaski she was being aggressive in regard to her efforts to be paid on time, sending her home from work for the rest of the day. Approximately one week later, Dr. Lawley issues Ms. Stramaski an unfounded coaching letter, lacking evidentiary support. Two weeks after that, Dr. Lawley makes the decision to terminate my client, a working mother of two and breadwinner for the household, for trying to get paid on time. We believe that Dr. Lawley, a state official acting in his individual capacity, is liable under the FLSA for retaliatory discharge. What damages do you believe you can get up against him? Monetary damages. Back pay? Do you think you can get back pay from him? Do you think you can get establishment of insurance or something like that from him? Or do you just mean cash for future ongoing problems? Well, I think it would track, like most of the employment statutes, Your Honor, that back pay and front pay would be available. So you think you can get back pay from him personally, even though he was not her employer who paid her salary? I believe so, yes. Under the FLSA, that is what the individual liability provides. So back pay, front pay, anything else? For retaliation, you can get, to the extent there are any, like the soft damages, the so-called soft damages. Right. I want to know if you're seeking all the whole gamut of what you're seeking against him individually. Yes, Your Honor. And I believe what Ms. Wetzel is correct in regard to some of the injunctive type relief, non-monetary damages would be inappropriate against Dr. Lawley, exactly for the reason, as Ms. Wetzel stated, that if he left TES, there would be no way to enforce that against him. Does he have to get health insurance for her? No. No, he does not. But what the statute provides for is wages and benefits to make the individual... That's what I'm asking. What benefits would he have to procure if he were found liable? It would just be monetary. It would not be the actual... What would be monetary? The cost of getting a policy on the ACA, or are you saying that's not part of the deal? Sure, yes, no, absolutely, something like that, or something in lieu of that. For example, we often estimate those types of damages in an employment context from how much the benefits were valued at the time of employment. Okay, I have another question. This case seems to me to have a fundamental issue that we're not really... We only address in the context of qualified immunity, if we have qualified immunity, but I'm wondering if we're allowed to address it just straight up. I don't know that there's a complaint for the purposes of the FLSA in this case. As a matter of law, I don't know that you've pleaded an actual complaint, because what you've described is not a complaint under the FLSA. And so, can we reach that issue straight up, or do we only reach that issue in the context of qualified immunity at this interlocutory appellate stage? Well, whether a complaint was lodged, I believe at the motion-dismiss phase, you have to take the facts in a light most favorable to the plaintiff, and I believe we do have sufficiently met that burden by alleging that Mr. Maskey, one, went to the assistant director of finance, and also to HR, the director of HR, to get paid on time. Right. I'm saying that I'm not sure that that constitutes a claim, a proper complaint, under the text and case law of FLSA. And so I'm asking, can we address that, or is that only we address that in the context of qualified immunity? Well, Your Honor, I do believe that does constitute a complaint when you're bringing an issue to the director of HR that you are not being paid timely, that that raises to the level of a violation of the FLSA. What's your best case for saying to the employer, since you're wanting to address it on the merits, so let's go ahead and address it on the merits. I've given you a couple opportunities to say we shouldn't address it on the merits, but you're responding by two answers addressing it on the merits. So, straight up then, what's your best case that says, you better pay me on time, by golly, or else you'll be violating the law, constitutes a complaint under the FLSA? I will defer to Your Honor in the sense of that, but while we're on the merits, I think given the extensive case law nationwide, including the specific pronouncement from the 5th Circuit in ATL-Covey-Broughton, a 1944 case cited at page 8 of my briefing, specifying that an employee does have a right to be paid timely, so trying to get paid timely would then issue, would rise to the level of a complaint, I believe, Your Honor. That's what case says that, that saying you must comply with the law is a complaint under the FLSA. You know, it used to be the law that you had to make a complaint to an authority that was not the employer, and then there's some wiggle room there now, and so I'm wondering the content of the complaint is, what case would say that is an FLSA complaint? In any circuit, in any court, in the whole country. And I believe I'm a bit confused by your question, Your Honor. I think what you're asking was, does what, were Mr. Maskey's actions, did that rise to the level of a complaint? First of all, I don't know that that is an issue addressed in the briefing by Ms. Wetzel, and so I would be happy to provide specific case law on that later, but I, but the extensive case law of Title VII and its progeny provides that bringing an issue to HR about working conditions, such as whether it be discriminatory or retaliatory treatment, rises to the level of a complaint. But case says that. I'm just asking you for one case that says that. Yes, Your Honor, and I have not. Besides this one. And yes, Your Honor, I have not. I have not briefed that matter, but I would be happy to provide briefing on that rising to a level, but I do believe the Broughton case includes a specific pronouncement that's specifying that an employee has the right to be paid timely. So if she is not being paid timely, bringing that to HR director should rise to the level of filing a complaint. If I may turn back to the issue of sovereign immunity, we address sovereign immunity first as the issue of qualified immunity becomes moot for purposes of the state's motion to dismiss if Dr. Lawley is deemed a sovereign. To answer the question of whether or not Dr. Lawley can be held liable in his individual capacity or not, we turn to the statute itself. Section 203D of the FLSA includes in the definition of employer, thus a liable party, any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency. And the provision goes on. So under this context, we review whether or not sovereign immunity bars suit against state officials in their individual capacities. It's a well-established law that the 11th Amendment of the Constitution bars lawsuits from being brought in federal courts against an unconsenting state or state official in his official capacity by her own citizens as well as by citizens of another state. However, and similar to our situation here, this court found in Modica v. Taylor that as a general rule, the 11th Amendment does not bar suits against state officers in their individual capacities. Mr. Greenfield, let me ask you about what the magistrate said about that, then adopted by the district judge. In distinguishing Henley, he says – I forget who the magistrate is – the magistrate says Henley was not a retaliation case. So you have this personal, objectionable conduct by the supervisor, and Henley is distinguished at its most basic, initially in that way. But then the magistrate says if Stramoski succeeds on her FLSA claim, Dr. Lawyer, not the state treasury, would ultimately be responsible for satisfying any monetary judgment. Why is that? Because it's a retaliation claim? And I thought the – that provision in Henley v. Simpson was interesting. I don't think it is directly tied to the monetary issue of whether the individual could make that payment, whether Dr. Lawley could make that payment. Could in a practical matter? Is that what you're saying? I think what the analysis of the court was going down in that regard is that in that case, they were implementing an overtime policy of the state, whereas here we are dealing with a retaliation provision. I contend that no anti-retaliation or whistleblower provision should have qualified immunity applied to it. In and of itself, I think it's inappropriate. What we're looking at in that regard ultimately stems down to a public policy issue with Ms. – which is what Ms. Wetzel touched on at the end of her argument. Are you embracing the district court adoption – so let's just say the magistrate – are you embracing that, A, this is a retaliation case, so that takes it out from under Henley? I don't want to use an inappropriate word in this, but let me just use an inappropriate word. It's almost like tortious conduct. It's inappropriate conduct by the individual official. And because of that, the 11th Amendment does not preclude monetary relief. Henley doesn't control. So I think you're being helpful to your own case, but maybe not the most reasonable interpretation of Henley and what he's talking about, which certainly seems to be talking about the inability, because besides some certainly lewd – whatever the name of it – is talking about 150 people. So in no way this defendant is going to be able to take all that. But regardless of what Henley means, are you hanging your hat on the fact that this is a retaliation case, and that's why it's personal liability of the defendant? Yes, I think the fact that it is a retaliation, and also what we find a very similar analysis in the Samuel Court – Samuel v. Holmes, a whistleblower case. It again instructs us to begin with the statute in and of itself, which provides this retaliation aspect. However, the statute is silent on the issue of qualified immunity, so we need to look – the court needs to analyze the legislative intent of whether the idea of qualified immunity comports with the goals of the FLSA retaliation provision. To that, we contend that qualified immunity is always ill-suited in retaliation and whistleblower cases. Retaliation and whistleblower statutes are intended to protect people who are trying to come forward and do the right thing. And also noted in the Samuel decision, granting government officials the protection of qualified immunity would hardly spur reluctant employees to step forward. My client, Mr. Stramaski, was doing just that, stepping forward to ensure that she would be paid timely in accordance with the FLSA. In addition, qualified immunity is ill-suited for retaliation and whistleblower claims because a reasonable official would know it would be a violation of the plaintiff's rights to fire her after she blew the whistle or made a complaint to be paid on time. I think the Supreme Court in Wyatt took a slightly different approach when the statute is silent on the issue of qualified immunity, asking whether or not Congress intended to incorporate an immunity at common law. As was discussed earlier, there was no progeny or common law. To that extent, I'm unaware of it. However, it would seem counterintuitive to me that Congress would specifically provide for individual liability under the FLSA Section 203C but intend for that same individual to be immune from suit unless important public policy concerns suggest the need of immunity. And that's where I think it draws back to the Henley case, Your Honor. They were implementing a statewide policy. Here, retaliation of whistleblower claims just don't fit that mold. A state agent will never be implementing a state policy or law if they are retaliating against an employee or a whistleblower. There is no need for that additional layer of immunity. Do you have anything further? Well, yes, Your Honor. If the court would like, I do believe the analysis should end on that point. But if the court does find that qualified immunity is applicable, the question then becomes, has Dr. Lawley's conduct stripped him of that protection? And we contend that he would be stripped of that protection. The court has laid out a two-part test in that regard. Did the official's conduct violate a constitutional or statutory right? And that's very important. And the answer to that question is yes. As previously discussed, Section 215A.3 of the FLSA unequivocally prohibits retaliation against the employee who files a complaint, including seeking timely payment of wages. And the second part of the test, were the official's actions objectively… What about her argument that there are no cases holding public officials liable under the FLSA, at least in our circuit, so there wouldn't be that notice in terms of clearly established, if indeed qualified immunity applies? The statute itself, Your Honor. The statute itself provides that individuals cannot retaliate for filing a complaint. And really, again, that ties back to the Samuel Court citing Frazier v. King. And to quote that, Your Honor, a reasonable official would know that it would be a violation of plaintiff's rights to fire her after she blew the whistle. That is, again, about the FCA and a whistleblower claim. I find whistleblower claims and retaliation provisions to be analogous in the sense of what Congress is trying to effectuate when those are written into statute. The issue is, has anyone else so found? You may analogize that. It may make logical sense. But for it to be clearly established, it has to – somebody else has to have made that leap, don't they? No, not as long as the statute itself is on point, Your Honor. The statute specifically provides that you cannot retaliate under the FLSA. And based on that, similar to the language in the FCA, that's how we come back to, again, what a reasonable official would know at that time. And the central concept here is giving employees of the state, state agents, fair warning. And again, that ties back to the Samuel Court in citing Frazier v. Keene, that a reasonable official would know that it would be a violation of plaintiff's rights to fire her after she blew the whistle. And that was, again, interpreting the FCA statute, their whistleblower provision in that sense. Do you have anything further, Mr. Greenfield? Just in summation, Your Honor, we believe that Dr. Lawley, in his individual capacity, is the real party of interest, not the state of Texas, and is therefore not shielded by sovereign immunity. And qualified immunity should never apply to any anti-retaliation or whistleblower provision, including those found under Section 215.83 of the FLSA. Thank you. Ms. Wetzel? You're on mute. On rebuttal, I would like to take up the merits of whether the plaintiff engaged in protected activity under the FLSA. And this also goes to the first prong of the qualified immunity test, which is whether Dr. Lawley violated a clearly established right of the plaintiffs. It is clear from plaintiff's complaint that prior to the events in question, she had been on leave because of a surgical procedure, and one of the causes of the confusion around her paycheck was the need for a return-to-work, release-to-work letter from her doctor. I just want to be clear that the FLSA does not guarantee timely payment of vacation, sick leave benefits, holiday time, and that is noted directly on any DOL, you know, FAQ page about the FLSA. So it would have been incredibly difficult in this context for the EHR Department and TEAS to understand her legal right to be paid on time as constituting a protected activity or constituting a complaint under the FLSA. To constitute a complaint under the FLSA, the Supreme Court has held that even a verbal complaint can suffice, but it has to be sufficiently clear and detailed so that a reasonable employer could understand that the employee was asserting rights protected by the FLSA in a call for their protection, and that is the Kasson case, which was cited in our opening brief. But it is enough to go to HR or supervisors. It's just a matter of how clearly you notify them that you're engaging in this complaint. Correct, correct, Your Honor, and notably, too, retaliation in the FLSA context is not as broad as retaliation in the Title VII context, which plaintiffs' counsel mentioned. So in the Title VII context, protected activity is any opposition to any practice, including making a charge, testifying, assisting, participating in an investigation, a proceeding, or hearing under Title VII. But still, the Fifth Circuit has held in the Title VII context that a vague complaint without any reference to an unlawful and unlawful employment practice can't constitute protected activity. So complaining about unfair treatment without specifying why the treatment is unfair isn't even protected activity under the Title VII context. And here, so another case that we cited in our brief, which is Hagen. For instance, a plaintiff personally voiced internal objections and concerns to management about the possibility that some technicians were receiving less overtime pay. And the court found that that sort of a verbal complaint about a speculative possibility of a future violation of the FLSA did not constitute protected activity under the FLSA. And so here, you know, not all abstract grumblings or vague expressions of discontent are actionable under the FLSA's complaints. And even though the complaint doesn't have to explicitly reference the FLSA itself, it must concern some violation of law. And so here, the opportunity for the FLSA to be violated had not even arisen, even assuming the plaintiff's paycheck has some wages component, which is the only way that it would be protected. Its timeliness would be protected under the FLSA. So going back to my qualified immunity arguments, Your Honors, because there is no case that clearly establishes this sort of a vague grumbling as protected activity under the FLSA, there was no way for Dr. Lawley to have fair notice that terminating Mrs. Stramaski could subject him to liability. And Plaintiff's Counsel makes much of the Monica case, but I would like to emphasize for this court that Monica actually held that because no court had previously held that an individual could be, a state official could be individually liable under the FMLA, that that official was therefore entitled to qualified immunity because that official didn't have fair notice that he or she could be subjected to personal liability under the FLSA. And so that same outcome, if this court is to hold that Dr. Lawley is the real party in interest, that qualified immunity is available under the FLSA, and that plaintiff's vague grumblings cause too protected activity under the FLSA, Dr. Lawley should still be entitled to qualified immunity because he could not have had fair notice that he would be subjected to personal liability for his actions under the FLSA. And so in conclusion, Your Honors, we would request that this court reverse the district court's judgment and dismiss plaintiff's claims in their entirety. Thank you for your time today. Thank you, Counsel. We have your arguments, and this case is submitted, and this session of the court will stand adjourned pursuant to the usual order. Thank you.